HARRIET GIGNOUX AND ELIZABETH A. GIGNOUX, PLAINTIFFS, *v.* MARY E. STAFFORD, DEFENDANT.

*Sale by assignees in bankruptcy under the United States statute chapter 9 of 1841 — power of the court to order a private sale without specifying the time thereof.*

Section 9 of the bankrupt act of 1841, providing that all sales by assignees " shall be made at such times and in such manner as shall be ordered and appointed by the court," was intended to apply to public sales only, and not to a private sale ordered by the court.

*Smith* v. *Long* (12 Abb. N. C., 113) distinguished.

SUBMISSION of a controversy upon an agreed statement of facts.

The plaintiffs entered into a written agreement with defendant, April 21, 1886, to sell to defendant certain real estate on the southerly side of St. Mark's avenue, in Brooklyn. The defendant paid the usual ten per cent, amounting to $180, and sixty dollars auctioneer's fees, and agreed to pay balance of the purchase-money June 1, 1886, when it was agreed that the plaintiffs should deliver to defendant a deed with the usual full covenants, and free and clear of all incumbrances. June 1, 1886, the deed was duly tendered and the

balance of the purchase-money demanded, but defendant refused to accept the deed and pay the balance, upon the ground that plaintiffs could not convey a good title to said premises as agreed between them, and demanded repayment of the ten per cent and auctioneer's fees aforesaid, and her expenses in examination of title. The facts upon which defendant bases her objections to the title were as follows: In 1841, James E. Underhill, now deceased, was seized of the premises about which this controversy arises. October 27, 1841, a creditor's bill was filed against Underhill in chancery, a receiver was appointed in the action, and an order was made that Underhill assign all his property to said receiver, and on June 18, 1842, Underhill made and delivered an assignment in writing, under seal, to said receiver of his property pursuant to the order of the Court of Chancery. July 7, 1842, said Underhill filed a petition, with schedules as a bankrupt, in the District Court of the United States, asking to be discharged from his debts under the bankrupt act of the United States of 1841. In the schedule annexed to his petition he mentioned the judgment creditors in the aforesaid chancery suit, and states that under the order of the Court of Chancery he had made an assignment of his property to the receiver, and annexed a copy of the said assignment. Down to the time of making and recording the deed of the assignee in bankruptcy, hereafter set forth, the assignment to the receiver does not appear upon record in Kings county, nor do the records of said county down to that time show any conveyances by the receiver of any of Underhill's estate.

In the bankruptcy proceedings the bankrupt, Underhill, made, under order of the United States Court, an assignment to William Coventry H. Waddell, general assignee, etc., of all his property, and the general assignee duly reported such assignment August 5, 1842. In March, 1858, the following proceedings were had:

"SOUTHERN DISTRICT OF NEW YORK,
"IN BANKRUPTCY.

"In the Matter of JAMES E. UNDERHILL, a Bankrupt.

"Decree August 5, 1842.

"The official or general assignee, to whom the estate of the said bankrupt was confided by decree aforesaid, respectfully reports that an application has been made to him to procure all the interest

which the said bankrupt had of, in and to certain streets set forth in a map, entitled 'Map of lots adjoining Parmentier's garden, belonging to James E. Underhill and others, situate in the city of Brooklyn, surveyed and laid out by R. Graves, October, 1834, and filed in the office of the register of Kings county, in the State of New York, March 30, 1835, wherever the same may not have been covered by the mortgages which have been foreclosed upon the lots set forth in said map, or where the same may have been fully set forth and covered thereby for a nominal consideration and the costs and charges of the assignee thereon, and the assignee aforesaid having carefully examined the subject-matter thereof, now moves the court for an order as follows, to wit:

" *Ordered*, That the official or general assignee be authorized to sell and dispose of the property herein referred to in manner aforesaid, at private sale, pursuant to the rules of said court.

" WM. COVENTRY H. WADDELL,

" *Official or General Assignee.*

" Dated *March*, 1858."

Indorsed : " Southern district of New York, in bankruptcy. In the Matter of James E. Underhill, a bankrupt. Report of assignee and order of sale. Order, S. R. Betts. Filed March 10, 1858."

The said general assignee thereupon conveyed the premises to one Leah Van Winkle, under whom the plaintiffs claim. The defendant claimed that the order directing the sale by the assignee was void because it did not fix the time of sale. .

*William C. De Witt*, for the plaintiffs.

*A. W. Gleason*, for the defendant.

BARNARD, P. J. :

The case of *Smith* v. *Long* (12 Abb. N. C., 113) has no application to the facts of this case. By the bankrupt act of 1841, chapter 9, sales of property under its provisions were to be " made at such times and in such manner as shall be ordered and appointed by the court in bankruptcy." The Court of Appeals held, in a case of public sale, that the bankrupt court must fix the time of the sale. The bankrupt court could, however, authorize a private sale, and in respect to the land in question, did authorize the assignee in bankruptcy to

sell it at private sale, which was done. The court, in such a case, was not bound to name a time when the sale should be consummated. The object of the law was to prevent sales without due proof of publicity. This provision would not apply to a private sale when a court, in the exercise of an undoubted power, authorizes a private sale, and fixes the consideration in the order. It would be an entirely useless requirement to fix a day for this private sale so authorized.

. The assignment to the receiver in chancery in some way became inoperative. The creditors who instituted the proceedings were made parties to the proceedings in bankrupcy. The assignment to the receiver was annexed to the bankruptcy proceedings, and after this the bankruptcy court ordered the sale of the lands conveyed by it. This must have been based either upon the assignment to the receiver being void under the bankrupt act, or by reason of the creditors preferring a distribution under that act. In either event the creditors were bound by the sale ordered by the United States District Court.

The title is not a doubtful one, but is good, and the defendant should take the same under her agreement.

PRATT, J. :

This is a submission of controversy, and the only question seriously raised is whether a sale by a general assignee in bankruptcy under an order that does not fix the time when such sale shall take place is valid.

Section 9 of the act provided that all sales by assignees " shall be made at such times and in such manner as shall be ordered and appointed by the court." The order under which the sale took place was as follows : " Ordered that the official assignee be authorized to sell and dispose of the property herein referred to, etc., at private sale, pursuant to the rules of said court." It is conceded the court had power under other provisions to order a private sale.

It will be at once seen that if the act in question is to be construed so that the court must appoint a time when the property should be sold at private sale, the power to sell at private sale is nugatory. No court could appoint a time when property should be sold at private sale, and hence such a construction cannot be

entertained. The whole law upon this subject must be read and all its parts construed in connection with each other. The section simply means that when a *time is appointed* it must be sold, but the court can direct the manner, and if it directs a manner in which it is impossible to appoint the time, the sale is not void. The specific words of the statute can be given their full force and meaning by applying them to sales ordered to be made at auction, and the time fixed for such sale to take place. The case of *Smith* v. *Long* (12 Abb. N. C., 113) is invoked as authority against this sale. That case has no application, as the sale was a public one, and the time could have been appointed.

The interpretation I have put upon this statute follows the general practice in the United States courts for a long series of years, and if it is not the proper one, then a large number of land titles will be thrown into inextricable confusion and doubt. It cannot be that the State courts, at this late day, will so interpret a statute as to run counter to the established practice in the United States courts, and throw doubt over the title of an immense amount of property that is held by virtue of such sales, especially when full effect can be given to the words of the statute, by holding that the appointed does not refer to an order providing for a private sale. The doctrine of the case of *Smith* v. *Long* does not cover this case, and it is not likely to be extended, in view of the consequences it would entail. We think the sale here by the assignee was valid, and carried the title.

A point is made that the title here is in a receiver in chancery, but it does not appear that any such conveyance was ever recorded, and it appears that the plaintiff is a *bona fide* purchaser, and has been in exclusive possession for twenty years. We have no hesitation in holding that the title is good, and that defendant must take it.

Judgment for affirmance.

Judgment for the plaintiff on submitted case.